IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MARK BROWN**,

    Plaintiff,

  v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

    Defendant.

_____

**Civ. No. 3:13-cv-02248-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

  Plaintiff Mark Brown brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

  Both parties agree that the Administrative Law Judge (ALJ) committed reversible error. The issue before this Court is whether to remand for an award of benefits or for further administrative proceedings. Because the ALJ properly rejected Dr. Wu's opinion and Ms. Engleman's opinion does not meet the credit-as-true factors, the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART, and this matter is REMANDED for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on January 12, 2010, alleging disability since August 24, 2005. Tr. 16, 73, 84, 164–78. These claims were denied initially and upon reconsideration. Tr. 16, 70–71, 95–96. Plaintiff timely requested a hearing before an ALJ, and appeared before the Honorable Richard A. Say on June 20, 2012. Tr. 16, 34–50. ALJ Say, in a written decision dated July 24, 2012, determined that plaintiff was disabled beginning June 6, 2011, thereby denying plaintiff's DIB claim,[1] but partially granting plaintiff's SSI claim. Tr. 16–27. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–3. Plaintiff now seeks judicial review.

Plaintiff, born on December 6, 1956, tr. 37, 164, 173, obtained his GED, tr. 25, 37, and worked most recently as an appointment setter (2007), a telemarketer (2002–2006), and a survey worker (2001–2002), tr. 47, 180–82, 228–34, 238–45. Plaintiff was forty-eight at the time of alleged disability onset, and fifty-five at the time of administrative hearing. *See* tr. 37, 164, 173.[2] Plaintiff alleges disability due to: chronic obstructive pulmonary disease (COPD) with tobacco abuse; bipolar disorder; post traumatic stress disorder (PTSD); alcohol dependence; obesity; polysubstance abuse in remission; bilateral carpal tunnel syndrome status post bilateral release; diabetes; obstructive sleep apnea; essential hypertension; intermittent diarrhea; gastroesophageal reflux disease (GERD); hepatitis C; intermittent subcutaneous nodules on arms and legs; and intermittent dizziness. *See* tr. 19–20, 38.

---

[1] Plaintiff's insured status ended on March 31, 2011. Tr. 18.
[2] Plaintiff was a "younger person" at the time of alleged disability onset and a "person of advanced age" at the time of administrative hearing. *See* 20 C.F.R. §§ 404.1563(c), (e).

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

Plaintiff contends that the ALJ erred in forming and applying plaintiff's RFC under the sequential evaluation. In particular, plaintiff argues: (1) the ALJ erred in evaluating the opinion of Kar-yee Wu, M.D.; and (2) the ALJ erred in evaluating the opinion of Lisa D. Engleman, PMHNP.[3]

---

[3] Psychiatric-Mental Health Nurse Practitioner.

3 – OPINION AND ORDER

### I. Dr. Wu's Opinion

Plaintiff contends that the ALJ erred in his consideration of Dr. Wu's opinion. *See* Pl.'s Br. 13–14, ECF No. 14. In response, defendant argues that the ALJ properly rejected Dr. Wu's opinion. Def.'s Mot. Remand 3–5, ECF No. 21.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contracted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* (citations omitted). Because Dr. Wu's opinion is contradicted in the record,[4] it can only be rejected by providing specific and legitimate reasons that are supported by substantial evidence.

Plaintiff met with Dr. Wu on June 18, 2012. *See* tr. 2094. Following this single instance of treatment, Dr. Wu submitted a check-the-box form on plaintiff's behalf identifying plaintiff's functional limitations. *See* tr. 2094–98. In that form, Dr. Wu opined that plaintiff had the RFC to:

---

[4] *See* tr. 645–61 (On September 8, 2007, Richard Alexander, M.D., opined that plaintiff had moderate limitations in his ability to: complete a normal work-day and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in the work setting.); tr. 56–57 (On June 16, 2010, Sandra L. Lundblad, Psy.D., opined that plaintiff had only mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.); tr. 58–59 (On June 23, 2010, Martin B. Lahr, M.D., M.P.H., opined that plaintiff's only physical RFC restriction was that he should avoid concentrated exposure to hazards.); tr. 79–80 (On February 1, 2011, Sharon E. Eder, M.D., affirmed Dr. Lahr's RFC findings); tr. 80–81 (On February 7, 2011, Dorothy Anderson, Ph.D., opined that plaintiff had *moderate* limitations in: carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the general public; and getting along with coworkers or peers without distracting them or exhibiting behavior extremes.); *see also* tr. 2099 (On June 21, 2012, Amie Tucker, M.D., opined that plaintiff may be able to speak for extended periods of time, as might be required for a job such as customer service agent or telephone solicitor.).

occasionally lift or carry up to ten pounds; stand or walk up to one hour in an eight hour day; occasionally reach overhead and shoulder height; and frequently handle, finger or feel. Tr. 2095. Dr. Wu also opined that plaintiff could never climb, balance, stoop/bend, kneel, crouch, or crawl. *Id*.

The ALJ, having reviewed Dr. Wu's opined limitations, assigned limited weight to Dr. Wu's opinion because it was speculative, based largely on the plaintiff's own subjective reporting, lacked sufficient explanation, and was based on treatment occurring after plaintiff's date last insured. Tr. 24.[5]

As to the speculative nature of Dr. Wu's opinion, plaintiff argues that this remark "lacks a premise[], amounting to a mere non sequitur." Pl.'s Br. 14, ECF No. 14. This Court is not persuaded. The ALJ explicitly identified at least two comments that can be reasonably interpreted as speculative. *See* tr. 24.[6] These findings, although not independently rising to the level of specific and legitimate, do generally support the ALJ's conclusion that Dr. Wu's opinion was inadequately explained. *See infra* § I.

As to plaintiff's subjective reporting, plaintiff does not dispute that Dr. Wu relied, at least in part, on this self-reporting. Dr. Wu, in fact, indicated at least *five times* that he relied on plaintiff's self-reporting. *E.g.*, tr. 2095 ("If you listed any limitations in Mr. Brown's use of his

---

[5] The ALJ explained:

> Dr. Wu's opinion is given some weight as of claimant's established onset date, but limited weight prior to that time because it is speculative and he admits much of his opinion is based on claimant's subjective reporting of symptoms. His opinion is provided on a check-box form supplied by claimant's attorney, and Dr. Wu did not start treating him until after his date last insured.

Tr. 24.

[6] First, the ALJ noted that Dr. Wu estimated that plaintiff stopped using illegal drugs or alcohol in August 2011. *See* tr. 24. Second, the ALJ noted that "[Dr. Wu] reported claimant would likely require unscheduled breaks 'likely because of his reported panic.'" Tr. 24 (quoting tr. 2098).

upper extremities, please state your reasoning/explanation. *He finds it hard to achieve those positions.*" (emphasis added)). Because the plaintiff does not dispute the ALJ's assessment of his credibility,[7] the ALJ properly considered Dr. Wu's reliance on self-reporting as a specific and legitimate reason. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (finding that an ALJ gave specific and legitimate reasons for partially rejecting a physician's opinion where the opinion was "based almost entirely on the claimant's self-reporting."); *see also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.").

As to Dr. Wu's explanation of his findings, plaintiff argues that the ALJ "overlooked . . . narrative explanations that Dr. Wu provided throughout the form." Pl.'s Br. 14, ECF No. 14. This Court, having independently reviewed the check-the-box form, is unable to identify *any substantive* narrative explanation. Nearly *all* of the narrative explanations included on the check-the-box form reference plaintiff's self-reporting. *See, e.g.*, tr. 2097 ("Please comment on Mr. Brown's ability to handle workplace stress . . . . Please explain the basis for your opinion: He reports panic attacks or feeling panicked when faced with even simple jobs or even riding the bus."). Those comments that do not rely on self-reporting fail to provide any meaningful basis for supporting Dr. Wu's findings. *See, e.g.*, tr. 2096 (Dr. Wu indicated that plaintiff suffered from an affective disorder, but was unable to determine whether this affective disorder was evidenced by medically documented persistence. Dr. Wu explained "this was not discussed with me with any length of time – he reports having anxiety and panic attacks . . . . He is seen at the VA for this."). As a result, the ALJ properly considered Dr. Wu's insufficient explanation as a

---

[7] Plaintiff has waived this issue because he did not raise it before this Court. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

specific and legitimate reason. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ . . . permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusions." (citation omitted)); *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

As to the date of treatment, plaintiff does not dispute that he only met with Dr. Wu on June 18, 2012, which was approximately fourteen months *after* plaintiff's insured status ended and twelve days *after* plaintiff's disability onset as identified by the ALJ. This temporal component is important because it alters the nature of Dr. Wu as a source of medical opinion, *see, e.g.*, *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003), and the weight accorded to his opinion, *see Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) ("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight that a reviewing physician's."). Dr. Wu's opinion spans the entire disputed time period, *see* tr. 2098 ("[I]s it reasonable to conclude that [plaintiff] has been limited by his impairments as you describe above since *on* or *before* 3/31/2011. Yes." (emphasis added)), but neither he nor his FNP, Alice Abrams, treated plaintiff prior to April 1, 2011, *see* tr. 2037–68, 2094. Thus, at least to the extent that Dr. Wu's opinion is assessed prior to April 1, 2011, it carries less weight.

The ALJ, having considered all of these reasons, properly rejected Dr. Wu's opinion to the extent that it was inconsistent with the RFC.

## II. Lay Witness Testimony

Plaintiff contends that the ALJ erred in his consideration of Ms. Engleman's opinion. *See* Pl.'s Br. 10–13, ECF No. 14. In response, defendant concedes error but seeks reevaluation in lieu of crediting this evidence.

Ms. Engleman is an "other source" pursuant to 20 C.F.R. § 404.1513(d). *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996), *superseded by regulation on other grounds as stated in Hudson v. Astrue*, No. CV–11–0025–CI, 2012 WL 5328786, at *4 n.4 (E.D. Wash. Oct. 29, 2012). An opinion offered by an "other source" requires *consideration. See* SSR 06-03P, 2006 WL 2329939, *4–5 (Aug. 9, 2006). To reject such an "other source" opinion, an ALJ must give reasons germane to that source for doing so. *See Molina v. Astrue*, 674 F.3d 1104, 1111–12 (9th Cir. 2012).

Plaintiff met with Ms. Engleman to receive mental health treatment at approximate two-month intervals between July 2008 and at July 2011. *See, e.g.*, tr. 1664–67 (January 10, 2011); 1674–76 (December 9, 2010); 1679–80 (October 15, 2010); tr. 1399–1402 (May 3, 2010); tr. 1430–32 (January 19, 2010). On July 18, 2011, Ms. Engleman submitted a check-the-box form on plaintiff's behalf identifying plaintiff's mental limitations. Tr. 1683–86. In that form, Ms. Engleman opined that plaintiff had moderate limitations in concentration, persistence or pace, and marked limitations in social functioning and activities of daily living. Tr. 1685. Ms. Engleman also opined that she "expect[ed] Mr. Brown to miss more than two days a month from even a sedentary job" because of the side effects of his psychiatric medications. *Id.*

The ALJ, having reviewed Ms. Engleman's opinion, assigned "some weight" to these limitations because they were "generally consistent with the record as a whole as of June 2011." Tr. 24. The ALJ did not, however, provide any reasons germane for rejecting these limitations to the extent they *differed* from the RFC. As conceded by defendant, this error is not harmless. As a

result, this Court must determine whether to credit this evidence as true. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).[8]

To determine whether to credit this evidence, this Court looks to three factors, including: (1) whether the record has been fully developed and further proceedings would serve no useful purpose; (2) whether the ALJ failed to provide legally sufficient reasons for rejecting the evidence; and (3) whether, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). If all three factors are satisfied, this Court may nonetheless "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) ("Instead of being a mandatory rule, we have some flexibility in applying the 'crediting as true' theory.").

Plaintiff unquestionably satisfied the second factor. This Court, however, has reservations as to the first and third factors.

As to the first factor, the medical record is clearly extensive; it includes nearly 2000 pages of medical records spanning a fourteen year time period (1998–2012). Despite this extensive record, plaintiff argues, absent explanation, that he is entitled to benefits on the basis of a check-the-box form submitted by Ms. Engleman in July 2011. This Court, as discussed more thoroughly below, is reluctant to rely on such a standardized form under the circumstances. Instead, this Court finds that additional evidence from an "acceptable medical source," i.e., a medical or psychological expert, will serve a useful purpose.

---

[8] Neither party provided a *substantive* argument under the credit-as-true doctrine.

9 – OPINION AND ORDER

As to the third factor, this Court is uncertain whether crediting Ms. Engleman's check-the-box form *requires* a disability finding on remand. As indicated, Ms. Engleman opined that plaintiff had moderate limitations in concentration, persistence or pace, and marked limitations in social functioning and activities of daily living. Tr. 1685. A moderate limitation in concentration, persistence or pace is *consistent* with the RFC's limitation to "unskilled work and routine tasks." *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008); *Jones v. Comm'r, Soc. Sec. Admin.*, Civ. No. 1:13–cv–00067–MC, 2014 WL 2213205, at *7 (D. Or. May 27, 2014). This Court is uncertain whether marked[9] limitations in social functioning and activities of daily living are more restrictive than the limitation to "superficial interaction with others and no close coordination and cooperation." Tr. 21. Assuming that there is a difference, *compare* tr. 20, *with* tr. 1685, this Court has not been provided with any information or evidence indicating that a disability finding would be *required* on remand if credited. In addition to those limitations, Ms. Engleman also opined that she expected plaintiff to "miss more than two days a month" because his "[m]edications are sedating and can cause loss of ability to concentrate." Tr. 1685. Again, this Court is uncertain whether such absences would *require* a disability finding. Plaintiff's attorney, Kevin Kerr, did not address this issue during his examination of the VE. *See* tr. 49.

In any event, even had plaintiff satisfied all three factors, the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.

First, plaintiff has a history of diagnosed substance abuse. The record indicates that plaintiff's continued substance abuse has impacted his mental impairments *after* the date of his

---

[9] "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App 1 § 12.00(C).

alleged disability onset, August 24, 2005. *See, e.g.*, tr. 263–67 (Between June 13, 2007 and June 21, 2007, plaintiff underwent inpatient treatment.); tr. 554 (On July 27, 2007, plaintiff reported that he had been drinking alcohol all day.); tr. 725 (On February 4 and February 21, 2008, plaintiff underwent urine drug tests. Both tests were positive for cannabis and benzodiazepine.); tr. 769 (On November 20, 2008, treatment notes reflected a diagnosis of 305.01 – Alcohol Abuse, Continuous Drinking Behavior; Alcohol Abuse-Continuous.); tr. 1686 (On July 18, 2011, Ms. Engleman indicated that she had seen "marked change in moods, both hypomanic and severe depression . . . when he is drinking."); tr. 2098 (On June 18, 2012, Dr. Wu noted that he estimated plaintiff quit using illegal drugs and alcohol in August 2011.). This Court cannot determine from the record whether appropriate evaluation of plaintiff's alcohol dependence has occurred under SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013).

Second, this Court is concerned with the *adequacy* of the narrative explanations underlying the check-the-box form itself. For example, Ms. Engleman opined that plaintiff would miss more than two days a month because his medications were "sedating and *can* cause loss of ability to concentrate." Tr. 1685 (emphasis added). From this explanation, it is unclear whether plaintiff's previously identified "moderate limitations" in concentration already encompassed these effects. As to the sedating effects of plaintiff's medications, this Court has little indication of the severity of such sedation or whether it can be reduced. *See, e.g.*, tr. 1675 (On December 9, 2010, Ms. Engleman noted that plaintiff was alert and oriented, but had a mood that was "tired."); tr. 1679 (On October 15, 2010, Ms. Engleman noted that plaintiff's affect appeared tired.).

Third, this Court is reluctant to extend Ms. Engleman's opined limitations beyond her treatment of plaintiff between July 2008 and July 2011. In particular, this Court notes that the

11 – OPINION AND ORDER

treatment records indicate that plaintiff did not receive mental health treatment between approximately May 2006 and May 2007. *See* tr. 611–20. Because many of Ms. Engleman's narrative explanations rely on the side effects of plaintiff's psychiatric medications, it is unclear whether such limitations apply prior to July 2008.

Accordingly, this Court declines to credit Ms. Engleman's opinion, *see* tr. 1683–86, and this matter is remanded for further proceedings.

## **<u>CONCLUSION</u>**

For these reasons, the Commissioner's final decision is AFFIRMED IN PART and REVERSED IN PART, and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. It is hereby ordered, upon remand:

**1.** The ALJ shall award SSI benefits from June 6, 2011 onward.

**2.** For the time period extending from August 24, 2005 to June 5, 2011, the ALJ shall:

**A.** Reevaluate Ms. Engleman's opinion, *see* tr. 1683–86, in accordance with SSR 06-03P;

**B.** Obtain additional evidence from a medical or psychological expert with respect to plaintiff's mental impairments;

**C.** Reevaluate plaintiff's substance abuse in accordance with SSR 13-2p;

**D.** Reevaluate plaintiff's RFC;

**E.** If warranted, the ALJ shall make new findings under step five of the sequential evaluation and obtain supplemental vocational expert evidence.

IT IS SO ORDERED.

DATED this 10th day of March, 2015.

_____
**Michael J. McShane**
**United States District Judge**

13 – OPINION AND ORDER